Glenn R. Kantor, SBN 122643
gkantor@kantorlaw.net
KANTOR & KANTOR, LLP
9301 Corbin Avenue, Suite 1400
Northridge, California 91324
Telephone: (818) 886-2525
Facsimile:  (818) 350-6272

Attorneys for Plaintiffs, Christopher J. and
Sharon G.-J., individually and on behalf of
A.J.J., a minor

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J. and SHARON G.-J., individually and on behalf of A.J.J., a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>ELEVANCE HEALTH, INC., formerly ANTHEM INSURANCE COMPANIES, INC., an independent licensee of the BLUE CROSS AND BLUE SHIELD ASSOCIATION, doing business as ANTHEM BLUE CROSS AND BLUE SHIELD; WELLS FARGO & COMPANY; and the WELLS FARGO & COMPANY HEALTH PLAN,<br><br>Defendants. | CASE NO.   3:24-cv-09198<br><br>**COMPLAINT FOR DAMAGES** |

Plaintiffs Christopher J. and Sharon G.-J., individually and on behalf of A.J.J., a minor, through their undersigned counsel, hereby complain against Defendants, alleging in the totality and alternatively as follows:

**INTRODUCTION**

A.J.J. received three months of medical treatment at Outback Therapeutic Expeditions ("Outback"). Defendants denied payment for any of the treatment, requiring Plaintiffs to pay nearly

$50,000 out of pocket. The Defendants did not contest medical necessity or any other aspect of the treatment; rather, the stated ground for denial was that the treatment A.J.J. received was wilderness therapy which is "excluded" under the Plan. This litigation thus arises from that narrow issue.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs are, and were at all times relevant hereto, residents of Fairfax County, Virginia. Christopher J. is A.J.J.'s father, and Sharon G.-J. is A.J.J.'s mother.

2. Wells Fargo & Company ("Wells Fargo") is, and was at all times relevant hereto, Christopher J.'s employer.

3. Through his employment, Christopher J. was and is a participant in the Wells Fargo & Company Health Plan (the "Plan").

4. At all times relevant hereto, A.J.J. was a minor and is Christopher J.'s dependent.

5. As Christopher J.'s dependent, A.J.J. was at all times relevant hereto, a beneficiary under the Plan.

6. The Plan is Plan number 537, Group #174245MEVA – Higher Use Plan with HSA - PPO.

7. Elevance Health, Inc., formerly Anthem Insurance Companies, Inc., an independent licensee of the Blue Cross and Blue Shield Association, doing business as Anthem Blue Cross Blue Shield ("Anthem") is the Claims Administrator for the Plan and provided health insurance services to Plaintiffs under the Plan.

8. The Plan is a welfare benefits plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

9. The Plan is self-insured by Wells Fargo. Anthem determines and pays claims, and is a fiduciary of the Plan as defined by ERISA.

10. This lawsuit is brought to obtain an order requiring Anthem to pay or reimburse expenses incurred during A.J.J.'s treatment at Outback. The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B); for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants'

violation of the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"); an award of pre-judgment interest; and an award of fees and costs pursuant to 29 U.S.C. § 1132(g).

11. This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

12. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process and venue and the location of the Plan.

## FACTUAL ALLEGATIONS[1]

### *Allegations regarding the Plan*

13. Wells Fargo issued a document to Plan participants titled "Benefits Book."

14. The Benefits Book contains Summary Plan Descriptions for the benefit plans that Wells Fargo sponsored, including medical plans.[2]

15. The medical plan which Wells Fargo sponsored and in which A.J.J. was a beneficiary was a Higher Use Plan with Health Savings Account.

16. The Higher Use Plan with HSA in which A.J.J. was a beneficiary was self-insured by Wells Fargo, and Wells Fargo appointed Anthem as the claims administrator.[3]

17. As the applicable claims administrator, Anthem was the named claims and appeals fiduciary for the applicable medical plan.[4]

18. The Plan provided that "All providers must be licensed or certified under state law to practice in the state or territory in which they are providing services and must be acting within the scope of their licensure or certification."[5]

---

[1] Unless otherwise noted, the information supporting these allegations is contained within the Administrative Record. The Administrative Record is incorporated herein by reference.
[2] Benefits Book at 1-3.
[3] Benefits Book at 2-9.
[4] Benefits Book at 2-9.
[5] Benefits Book at 2-9.

19. The Plan stated that beneficiaries of the medical plan had "the choice to see any provider for most covered health services, and no referrals [were] required to see a specialist."[6]

20. The Plan includes coverage for "Applied Behavioral Analysis (ABA) Intensive Behavioral Therapy (IBT) for enrolled participants and dependents diagnosed with autism and autism spectrum disorders."[7]

21. Generally, covered services under the Plan's Autism coverage include "Inpatient or 24-hour supervisory care, or both" and "Services at a Residential Treatment Facility."[8]

22. The Plan included coverage for mental health and substance abuse residential treatment.[9]

23. The Plan stated that "Residential treatment is considered inpatient hospital care."[10]

24. The Plan's description of the benefits provided for mental health and substance abuse residential treatment included the following:

> If pre-service authorization is received, the medical plans cover mental health and substance abuse licensed residential treatment services that are provided in a facility or a freestanding residential treatment center that provides overnight mental health services or substance abuse treatment for individuals who do not require acute inpatient care but who do need 24-hour medical supervision.
>
> To be covered, the claims administrator's residential treatment criteria must be met and the center must include an adequate educational program as determined by the applicable claims administrator at its discretion.
>
> A residential treatment facility is a facility that provides a program of effective mental health services substance use disorder services treatment and that meets all of the following requirements:
>
> - It is established and operated in accordance with applicable state law for residential treatment programs.
>
> - It provides a program of treatment under the active participation and direction of a Physician and approved by the Mental Health/Substance Use Disorder Administrator.

---

[6] Benefits Book at 2-9.
[7] Benefits Book at 2-59.
[8] Benefits Book at 2-59.
[9] Benefits Book at 2-94 to 2-95.
[10] Benefits Book at 2-95.

- It has or maintains a written, specific, and detailed treatment program requiring full-time residence and full-time participation by the patient.

- It provides at least the following basic services in a 24-hour per day, structured milieu:

    - Room and board

    - Evaluation and diagnosis

    - Counseling

    - Referral and orientation to specialized community resources[11]

25. The Benefits Book does not define the terms "Physician" or "Mental Health/Substance Use Disorder Administrator."[12]

26. The Mental health and substance abuse residential treatment section of the Benefits Book describes services that are "Not covered," which contains the following:

- Residential accommodations to treat medical or behavioral health conditions, except when provided in a hospital, hospice, skilled nursing facility, or residential treatment center. This exclusion includes procedures, equipment, services, supplies, or charges for the following:

    . . .

    - Services or care provided or billed by a school, custodial care center for the developmentally disabled, wilderness or outdoor camps and programs, even if psychotherapy is included.[13]

27. The Benefits Book also notes that coverage is provided for inpatient stays in a skilled nursing facility or acute inpatient rehabilitation facility.[14]

///

///

---

[11] Benefits Book at 2-95.
[12] *See* Benefits Book generally.
[13] Benefits Book at 2-95.
[14] Benefits Book at 2-122.

5
COMPLAINT FOR DAMAGES

### *Background of A.J.J's medical issues and treatment*

28. A.J.J. was diagnosed with autism spectrum disorder; attention-deficit/hyperactivity disorder, combined presentation; unspecified anxiety disorder; and developmental coordination disorder.

29. A.J.J. received medical care and treatment for these disorders with Greg Burnham, LMFT and Outback from October 7, 2022 through December 22, 2022.

30. Outback was located in Lehi, Utah.

31. Outback offered therapy programs for teenagers aged 13-17 dealing with issues including: depression, anxiety, social isolation, emotional outbursts, substance abuse and traumatic events.

32. Outback was licensed by the state of Utah as an outdoor youth program and operated in accordance with the governing Utah state regulations. Outback was also a member of the National Association of Therapeutic Schools and Programs and had been since 2002. It was also accredited by the Outdoor Behavioral Healthcare Industry Council.

33. A.J.J. benefitted from the intensive behavioral therapy treatment he received at Outback and had improvements in each of his diagnosed conditions from the services he received at Outback.

34. Outback charged $48,895 for the services it provided to A.J.J., which charges were submitted to Anthem.

35. The total amount of claims denied by Anthem was $48,895.

36. In an Explanation of Benefits (EOB) dated March 22, 2023, Anthem denied the claims for this treatment in their entirety. In the EOB, Anthem wrote "015 The amount shown here is more than your plan allows for this care" and "707 This service requires preapproval. Your plan doesn't cover this service without it." As part of the EOB, Anthem included a page entitled "Your appeal rights" that provided explicit instructions on how to file an appeal.

37. The EOB did not specify any Plan provision, *i.e.*, it did not identify the exclusion upon which the denial was based and to which the EOB referred.

38. In a letter dated September 8, 2023, Plaintiffs requested a Level One Member Appeal of Anthem's adverse benefit decision. In the letter, Plaintiffs noted the following:

   a. The Plan provides that the maximum penalty for failure to obtain pre-service authorization is only a 20% reduction of the eligible expenses -- not a 100% penalty applied by Anthem;

   b. Anthem should conduct a retrospective review of A.J.J.'s claims;

   c. That Anthem should uphold Plaintiffs' rights under ERISA;

   d. That Anthem should not impose more restrictive treatment limitations on behavioral health benefits in violation of the MHPAEA; and

   e. That Plaintiffs are entitled to copies of all documents under which the Plan is operated.

39. In a letter dated October 10, 2023, Anthem reviewed Plaintiffs' request for the coverage of A.J.J.'s services received at Outback – and notified Plaintiffs that the request had not been approved because it was "excluded or not covered under your plan benefits." In addition:

> Request is being administratively denied. Under the Not Covered section listed on page 93 of your Benefit Booklet, excluded services include: Services or care provided or billed by a school, custodial care center for the developmentally disabled, wilderness or outdoor camps and programs, even if psychotherapy is included.

40. On December 1, 2023, Plaintiffs sent a letter requesting a Second Level One Appeal for the denial of A.J.J.'s treatment at Outback for services from October 7, 2022 through December 22, 2022. In the letter, Plaintiffs noted the following:

   a. Plaintiffs disagreed with Anthem's adverse determination of benefits because A.J.J.'s treatment was a covered benefit under the Plan, is not experimental or investigational in nature, and that Anthem may have been administering the Plan in violation of federal mental health parity law.

   b. Plaintiffs believe that Anthem violated their appeal rights, which Anthem is obligated to uphold under federal law.

  c. Plaintiffs are entitled to certain rights throughout the internal appeals process under ERISA.

  d. Anthem incorrectly concluded that the treatment A.J.J. received at Outback was "Acute Psychiatric IP." Outback is not an acute psychiatric inpatient facility, but rather an intermediate outdoor behavioral health program.

  e. Anthem failed to provide a full review of the denial of A.J.J.'s claim. Instead, Anthem's denial letter arbitrarily cuts off the date of service after December 21, 2022.

  f. Anthem failed to provide clear evidence that the Plan was being administered in accordance with the MHPAEA, as evidenced by conducting a parity analysis.

  g. By withholding the requested Plan documents from Plaintiffs, Anthem deprived Defendants of the opportunity to conduct an independent parity analysis themselves.

41. In their December 1, 2023 letter, Plaintiffs requested Anthem/the Plan uphold their rights under ERISA, including: (1) a full, fair, and thorough review; (2) all comments, documents, records, and other information relating to A.J.J.'s claim; (3) the specific reasons for the adverse determination including any specific plan provisions, medical criteria, and other documents utilized in making said determination; (4) the identification and credentials of any medical or vocational expert whose advise was obtained in connection with A.A.J.'s claim (even if it was not relied upon in making the decision); and (5) a description of any additional material or information necessary for Defendants to perfect A.J.J.'s claim along with an explanation of why such information is necessary.[15]

42. Plaintiffs also expressed concern that the Plan might be applying inequitable treatment limitations of the kind prohibited by the MHPAEA.

---

[15] *Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure*, Federal Register, Vol. 65, No. 225, 21 November 2000, pp. 70268–70269.

a. Plaintiffs noted that, because the Plan provides coverage for the treatment of behavioral health conditions and medical conditions, it was obligated to administer these benefits at parity with one another.

b. Plaintiffs noted that skilled nursing facilities, subacute rehabilitation facilities, and inpatient hospice facilities are an analog to intermediate outdoor behavioral health programs, and thus the benefits must be at parity therewith.

c. Plaintiffs noted that the restrictions, requirements, and standards for administering behavioral health benefits – such as restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage – cannot be more intensive than those for comparable medical or surgical services.

d. Plaintiffs requested that the Plan's review include a parity analysis to determine whether or not it was truly being administered in compliance with the MHPAEA.

43. Plaintiffs indicated that excluding mental health treatment merely because it occurs outdoors appears to place a limitation on mental health that is different or more restrictive than limitations placed on medical/surgical conditions.

44. Plaintiffs requested physical copies of any and all documentation used in conducting the requested parity analysis. Plaintiffs requested that the plan administrator provide them with details regarding: (1) the specific plan language regarding the above limitation and identify all of the medical/surgical and mental health and substance use disorder benefits to which it applies (or does not apply) in the relevant benefit classification; (2) the factors used in the development of the limitation; (3) the evidentiary standards used to evaluate the factors; (4) the methods and analysis used in the development of the above limitation; and (5) any evidence and documentation to establish that the limitation is applied no more stringently, as written and in operation, to mental health and substance use disorder benefits than to medical and surgical benefits.

45. Plaintiffs asked why, if the Plan maintained its initial denial, the terms and conditions of the Plan and the MHPAEA did not apply to A.J.J.'s case.

46. Plaintiffs asked that, if the claim was not paid, the Plan send them a copy of all documents under which the plan is operated including all governing plan documents, the summary plan description, any insurance policies in place for the benefits A.J.J. was seeking, and any administrative services agreements that exist.

47. Plaintiffs further requested any clinical guidelines utilized in the Plan's determination, including the plan's mental health, substance use disorder, medical/surgical or mental health and substance use disorder criteria, regardless of whether the criteria were used to evaluate this claim.

48. Plaintiffs further requested any reports or opinions provided to Anthem from any physician or other professional.

49. Plaintiffs requested the names, qualifications and healthcare claim denial rates of all individuals who reviewed the claim or with whom Anthem consulted about the claim.

50. In a letter dated December 27, 2023, Anthem informed Plaintiffs that it had reviewed the Second Level One Appeal but upheld the decision to deny services for A.J.J.'s treatment with Outback with the following explanation:

> After careful review, the denial of wilderness therapy at Outback Therapeutic Expeditions for dates of service October 7, 2022, through December 22, 2022, due to wilderness therapy not being a covered benefit, has been upheld. Wilderness therapy is not a covered service under your 2022 Wells Fargo Summary Plan Description.
>
> On page 2-95 of your 2022 Wells Fargo Summary Plan Description, under the heading "Mental health and substance abuse residential treatment", it states:
>
> Not Covered
>
> Services or care provided or billed by a school, custodial care center for the developmentally disabled, wilderness or outdoor camps and programs, even if psychotherapy is included.
>
> On page 2-137 of your 2022 Wells Fargo Summary Plan Description, under the heading "Exclusions", it states:

> Unproven services These include medical, surgical, diagnostic, mental health, substance abuse, wilderness or outdoor therapy (including but not limited to outdoor camps, programs, or the like) or other health care services, technologies, supplies, treatments, therapies, procedures, programs, drug therapies, or devices where, at the time the utilization review organization or the claims administrator makes a determination regarding coverage in a particular case:
>
> ·Reliable, authoritative evidence (as determined by the applicable claims administrator) does not permit conclusions concerning the service's safety, effectiveness, or effect on health outcomes as compared with the standard means of treatment of diagnosis
>
> ·The conclusions determine that the treatment, service, or supply is not effective
>
> ·Conclusions are not based on trials that meet other of the following designs:
>
> -Well conducted, randomized controlled trials in which two or more treatments are compared with each other, and the patient is not allowed to choose which treatment is received
>
> -Well-conducted cohort students in which patients who receive study treatment are compared with a group of patients who received standard therapy; the comparison group must be nearly identical to the study treatment group.
>
> Decisions about whether to cover new technologies, procedures, and treatments will be consistent with conclusions of prevailing medical research based on well-conducted randomized trials or cohort studies as determined by the applicable claims administrator.
>
> [Christopher J.] is contesting that your policy does not allow for the treatment of wilderness therapy and raised concerns that the decision violates the Mental Health Parity and Addiction Equity Act (MHPAEA) and NQTL's (Non-Quantitative Treatment Limitations). Your plan is not imposing nonquantitative treatment limitations (NQTLs) and is not violating the Mental Health Parity and Addiction Equity Act (MHPAEA). Your policy is self-insured, and the employer group chooses which treatments it will cover. Wilderness therapy is not a covered benefit under your Wells Fargo benefit plan.

51. The December 27, 2023 denial letter asserted that the decision did not violate the MHPAEA and Non-Quantitative Treatment Limitations (NQTLs). It was signed by "Daniel H.", who was identified as a Behavioral Health Appeals Coordinator, Sr., Grievances and Appeals, who

wrote that the "policy was self-insured, and the employer group chooses which treatments it will cover."

52. On April 22, 2024, Plaintiffs requested an external review of the appeal for denial of the therapy services A.J.J. received at Outback, and noted the following:

      a. A.J.J.'s treatment was not experimental, investigational, or unproven -- it was imperative that he receive treatment to cope with his mental illnesses; and

      b. An independent review must include consumer protections established by the National Association of Insurance Commissioners (NAIC), as outlined in the Uniform Health Carrier External Review Model Act which established minimum qualifications for independent reviewers.

53. In a letter dated April 29, 2024, Anthem notified Plaintiffs that their request had been denied; Anthem determined that the appeal did not qualify for external review because it was not based on a medical judgment or rescission of coverage. The letter was signed by "Chad H.", identified as Behavioral Health Appeals Coordinator, Sr.

54. With respect to the denial from Anthem, Plaintiffs were unable to find any exclusion for intermediate behavioral health treatment or outdoor behavioral health programs.

55. As set forth above, Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

56. The denial by Anthem/the Plan of benefits solely and directly caused Plaintiffs to pay $48,895 for A.J.J.'s treatment at Outback.

57. After receiving the denial, litigation was Plaintiffs' only option to enforce their right to benefits owing under the Plan and seek reimbursement of expenses under the terms of the Plan (as written or as reformed or required by MHPAEA), and/or under the MHPAEA amendments to ERISA.

58. Plaintiffs thereafter retained the undersigned to pursue their rights and remedies under ERISA.

59. The remedies Plaintiffs seek herein are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008, pre-judgment interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

## FIRST CAUSE OF ACTION
### (Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))

60. All allegations of this Complaint are incorporated here as though fully set forth herein.

61. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

62. Anthem and the Plan wrongly excluded coverage for A.J.J.'s treatment in violation of the terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health disorders. In the administrative process, Anthem and the Plan did not challenge that A.J.J.'s treatment was medically necessary.)

63. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

64. Anthem/the Plan's Denial Letters demonstrate the absence of a meaningful analysis of Plaintiffs' appeals. Among other things, Anthem/the Plan did not engage with or respond to the issues presented in the appeals and did not meaningfully address the arguments or concerns raised during the appeal process.

65. Anthem/the Plan breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in A.J.J.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries,

to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of A.J.J.'s claims.

66. The actions of Anthem and the Plan in denying payment for A.J.J.'s treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

## SECOND CAUSE OF ACTION

**(Violation of the Mental Health Parity and Addiction Equity Act (29 U.S.C. § 1132(a)(3))**

67. All allegations of this Complaint are incorporated here as though fully set forth herein.

68. The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of Anthem/the Plan's fiduciary duties.

69. Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

70. The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

71. Impermissible nonquantitative treatment limitations (NQTLs) under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

72. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for A.J.J.'s treatment include subacute inpatient treatment settings such as skilled nursing facilities, inpatient rehabilitation facilities, etc.

73. The Plan does not exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in the manner Anthem/the Plan excluded coverage of treatment for A.J.J. at Outback.

74. Upon information and belief, Anthem/the Plan's denial of coverage also violated the MHPAEA in application or effect. Because Anthem/the Plan declined to produce the requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

75. Defendants are in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

76. Plaintiffs expressly requested Anthem to perform a MHPAEA analysis of the Plan. They expressed serious concern that Anthem was violating the statute and asked for a response using specific and direct examples. Anthem failed or declined to do this and failed or declined to even address the MHPAEA in its Denial Letter or EOBs.

77. These MHPAEA violations by Defendants are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of Defendants violate the MHPAEA;

    (b) An injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute;

    (c) An Order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

    (d) An Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA;

(e) An Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA;

(f) An Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

(g) An Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA; and

(h) An Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment.

78. In addition, Plaintiffs are entitled to an award of pre-judgment interest pursuant to U.C.A. § 15-1-1, and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiffs seek relief as follows:

1. Judgment in the total amount owed for A.J.J.'s treatment at Outback;
2. Pre- and post-judgment interest to the date of payment;
3. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined under Plaintiffs' Second Cause of Action;
4. Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and
5. For such further relief as the Court deems just and proper.

DATED: December 18, 2024

KANTOR & KANTOR, LLP

/s/ Glenn R. Kantor
Glenn R. Kantor
Attorneys for Plaintiffs, Christopher J. and Sharon G.-J., individually and on behalf of A.J.J., a minor